IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. |
| | ) | |
| Plaintiff, | ) | JUDGE |
| | ) | |
| v. | ) | |
| | ) | |
| $15,742.00 IN U.S. CURRENCY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | **COMPLAINT IN FORFEITURE** |

NOW COMES Plaintiff, the United States of America, by Rebecca C. Lutzko, United States Attorney for the Northern District of Ohio, and Henry F. DeBaggis, Assistant U.S. Attorney, and files this Complaint in Forfeiture, alleging, in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure, as follows:

## JURISDICTION AND INTRODUCTION

1.     This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. Section 1345, and over an action for forfeiture under 28 U.S.C. Section 1355(a). This Court also has jurisdiction over this particular action under 21 U.S.C. Section 881(a)(6).

2.     This Court has *in rem* jurisdiction over the defendant currency: (i) pursuant to 28 U.S.C. Section 1355(b)(1)(A) because acts giving rise to the forfeiture occurred in this district; and, (ii) pursuant to 28 U.S.C. Section 1355(b)(1)(B), incorporating 28 U.S.C. Section 1395,

because the action accrued in this district.  This Court will have control over the defendant currency through service of an arrest warrant *in rem*, which the Department of Homeland Security by Homeland Security Investigations (HSI) will execute upon the defendant currency. *See*, Supplemental Rules G(3)(b) and G(3)(c).

3.      Venue is proper in this district: (i) pursuant to 28 U.S.C. Section 1355(b)(1)(A) because acts giving rise to the forfeiture occurred in this district; and, (ii) pursuant to 28 U.S.C. Section 1395 because the action accrued in this district.

4.      On or about June 5, 2024, Defendant $15,742.00 in U.S. Currency was seized from the person and carry-on duffle bag of Melvin Cortez Appling (APPLING) at Cleveland Hopkins International Airport (CLE), and the defendant currency is now in the custody of the federal government.

5.      Subsequent to the seizure, U.S. Customs and Border Protection's (CBP) Fines, Penalties & Forfeiture Office (FP&F) commenced an administrative forfeiture proceeding against the defendant currency.  A claim to the defendant currency was submitted by APPLING in the administrative forfeiture proceeding, thereby requiring the filing of this judicial forfeiture action.

6.      Defendant $15,742.00 in U.S. Currency is subject to forfeiture to the United States under 21 U.S.C. Section 881(a)(6) in that it constitutes proceeds from illegal drug distribution activities, and/or was used - or was intended to be used - in exchange for illegal controlled substances, and/or was used - or was intended to be used - to facilitate illegal drug distribution activities.

**FORFEITURE**

7.     On or about June 5, 2024, HSI Task Force Officers (TFO) were conducting airport interdiction at CLE when APPLING was observed continuously watching the law enforcement canine as it moved around the C25 gate area.

8.     TFO Gibbons observed that APPLING possessed a gray and black duffle bag, that he was wearing a t-shirt and shorts, and that he had a bulge in the right front pocket of his shorts.

9.     TFO Gibbons observed APPLING get in the boarding line for United Airlines flight UA1482 from Cleveland to Los Angeles, scan his boarding pass, and enter the jet bridge.

10.     TFO Gibbons approached APPLING on the jet bridge, identified himself as a law enforcement officer, asked to speak with him, and APPLING agreed.

11.     TFO Gibbons asked APPLING where he was traveling to and for how long and APPLING said he was traveling to Los Angeles but was unsure of his return date at first, though later stated that he was coming back on Sunday, June 9, and that he was traveling for business and vacation.

12.     TFO Gibbons asked APPLING if he was in possession of a large amount of U.S. currency, and APPLING stated that he had around $5,000.00 in his pocket.

13.     TFO Gibbons asked APPLING if he had any other U.S. currency in his possession, and APPLING stated that he did not.

14.     TFO Gibbons asked APPLING if he had any U.S. currency in the duffle bag and APPLING stated that he did not.  TFO Gibbons asked APPLING for his consent to search the duffle bag, and APPLING stated that the bag was locked.  TFO Gibbons asked APPLING again

if he had U.S. currency in the duffle bag, and APPLING stated that he had $10,000.00 in the duffle bag.

15.     TFO Gibbons asked APPLING how much total U.S. currency he had in his possession, and APPLING stated he had $15,000.00 altogether.

16.     APPLING told TFO Gibbons that he had a State of Ohio marijuana vendor's license and that he was traveling to Los Angeles to purchase vapes and other smoke shop products for a smoke shop that he was in the process of opening.[1]

17.     TFO Gibbons asked APPLING if the vapes he planned on purchasing will contain tetrahydrocannabinol (THC), and APPLING stated that they will contain THC.

18.     TFO Gibbons asked APPLING if he would walk to the HSI airport office with him and APPLING agreed; but once he was off the jet bridge, APPLING changed his mind and stated he did not want to go to the HSI office.

19.     While APPLING was off the jet bridge in the gate C25 area, TFO Fronckowiak and his trained/certified bulk U.S. currency/weapons canine, Jessy, conducted a canine sniff of APPLING's black and gray duffle bag for the odor of illegal narcotics, and Jessy alerted to the duffle bag.

20.     APPLING asked if he was free to leave on his flight, and TFO Gibbons advised APPLING that he was free to leave at any time, but the U.S. currency and his bag were being detained.

21.     APPLING stated that he wanted to go on his trip with the clothing that was in his bag and told TFO Gibbons to search his bag and that he did not have anything illegal in the bag.

_____

[1] Subsequently, law enforcement determined that APPLING was not registered to sell marijuana in Ohio or in any other state.

22.    TFO Gibbons advised APPLING that he did not have to give consent to search his bag and that if he did not provide consent, TFO Gibbons would have to obtain a search warrant to search the bag.

23.    TFO Gibbons advised APPLING that he could go on his trip and take his bag if he did not have anything illegal in the bag.

24.    A consent search of APPLING's checked bag did not result in the seizure of contraband or U.S. currency; however, the search of APPLING's duffle bag resulted in the seizure of multiple rubber-banded "quick count" bundles of U.S. currency concealed in an inside pocket of the duffle bag.

25.    TFO Gibbons asked APPLING again why he was traveling to Los Angeles, and APPLING stated that he was going to purchase vapes containing THC, but later APPLING stated that he was purchasing nicotine vapes, not THC vapes.

26.    TFO Gibbons asked APPLING if he was employed, and APPLING stated that he owns real estate, works as a barber at Fade to Black barber shop, and works construction at Mac Industries.

27.    TFO Gibbons asked APPLING if he had a bank account and after APPLING confirmed that he did, TFO Gibbons asked APPLING why he didn't deposit the U.S. currency and use his debit card to avoid carrying a large amount of U.S. currency at the airport; APPLING stated that he was dealing with an all-cash business in California.

28.    TFO Gibbons asked APPLING if he had a cash application on his phone and APPLING stated that he did.  TFO Gibbons asked APPLING for permission to search his cash application timeline.  APPLING agreed and opened his cash application timeline which showed

several peer-to-peer (P2P) payments from several different individuals in round and even amounts.

29.    TFO Gibbons asked APPLING if he had any photos in his phone of illegal narcotics or large amounts of U.S. currency, and APPLING said that he did not have any photos of illegal narcotics or large amounts of U.S. currency.

30.    TFO Gibbons asked APPLING for consent to search his cell phone and after APPLING gave his consent, TFO Gibbons searched the phone and saw photos of large amounts of marijuana and a ledger with marijuana strain/type amounts with prices.

31.    After seizure of the U.S. Currency, a canine sniff for the odor of illegal narcotics on the U.S. Currency was conducted by Cleveland Police Department (CPD) Officer Andrejcak and his trained/certified (heroin, cocaine, methamphetamine, and marijuana) canine partner Finnegan, and canine Finnegan alerted to the presence of an illegal narcotic odor on the seized U.S. Currency.

32.    On or about June 7, 2024, the seized U.S. Currency was transferred to a facility contracted by HSI and the facility determined that HSI seized a total of $15,742.00 in U.S. Currency from APPLING.

33.    On or about October 8, 2024, a United States Postal Inspection Services (USPIS) Postal Inspector reviewed United States Postal Service business records and identified a suspected drug parcel addressed to Hair by Nova, 5120 Mayfield Rd Unit 246, Lyndhurst, OH 44124, with a return address of Jamie Daniels, 10795 Wakefield St E, Adelanto, CA 92301.

34.    On or about October 11, 2024, U.S. Magistrate Judge Reuben J. Shepherd granted an application by a federal law enforcement officer for a search and seizure warrant for the above parcel addressed to Hair by Nova.

6

35.    On or about October 15, 2024, a federal law enforcement officer searched the

above parcel addressed to Hair by Nova and seized approximately 2.435 kilograms of suspected

marijuana located inside the parcel.

36.    On or about June 12, 2015, Articles of Organization for HAIR BY NOVA LLC

were filed with the Ohio Secretary of State, which included naming Melvin Appling Sr. as the

Statutory Agent for HAIR BY NOVA LLC, with the signature of Melvin Appling Sr.

acknowledging and accepting his appointment as Statutory Agent.  The receipt for the payment

to file the Articles of Organization for HAIR BY NOVA LLC was sent to:

> HAIR BY NOVA LLC
> MELVIN APPLING SR
> 13940 CEDAR RD #347
> UNIVERSITY HEIGHTS, OH 44118

### CONCLUSION

By reason of the foregoing, Defendant $15,742.00 in U.S. Currency is subject to

forfeiture to the United States under 21 U.S.C. § 881(a)(6) in that it constitutes proceeds from

illegal drug trafficking activities, and/or was used - or was intended to be used - in exchange for

illegal controlled substances, and/or was used - or was intended to be used - to facilitate illegal

drug trafficking activities.

WHEREFORE, plaintiff, the United States of America, requests that this Court enter judgment condemning the defendant currency and forfeiting it to the United States, and providing that the defendant currency be delivered into the custody of the United States for disposition according to law, and for such other relief as this Court may deem proper.

Respectfully submitted,

REBECCA C. LUTZKO
United States Attorney
Northern District of Ohio

By:    _____
Henry F. DeBaggis (OH: 0007561)
Assistant United States Attorney
Carl B. Stokes U.S. Court House
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113
216.622.3749
Fax: 216.522.7499
Henry.DeBaggis@usdoj.gov

**VERIFICATION**

STATE OF OHIO ⟩
⟩ SS.
COUNTY OF CUYAHOGA ⟩

    I, Henry F. DeBaggis, under penalty of perjury, depose and say that I am an Assistant

United States Attorney for the Northern District of Ohio, and the attorney for the plaintiff in the

within entitled action. The foregoing Complaint in Forfeiture is based upon information

officially provided to me and, to my knowledge and belief, is true and correct.

Henry F. DeBaggis (OH: 0007561)
Assistant United States Attorney

Sworn to and subscribed in my presence this _17th_ day of October, 2024.

Notary Public

ANNA J DUDAS
Notary Public
State of Ohio
My Comm. Expires
December 5, 2026